Curia, per

Butler, J.
The questions made in this case arise on the three first grounds of appeal.
1st. Is this a case in which the plaintiffs had a right of peremptory challenge 1
2d. If so, were they bound to make the challenge in the first instance; or, failing to do so, had they forfeited their right altogether 1 — and,
3d. Were the places of the jurymen taken off under the challenges properly filled up, by subjecting the supernumerary jurors to be drawn by lot, instead of having them drawn in the first instance, and then allowing the parties to take them in the order in which their names stood on the list 'l
*421 1st. By the Act of 1841, it is provided that “in all civil' cases in which a jury shall be impannelled, before they shall be charged with the trial of any issue, each party shall have the right to challenge, without cause shewn, two of the jury so impannelled.” The words, civil cases, seem to be here used in contradistinction to cases of indictment in the court of sessions, in which the defendant is charged with some criminal offence, and do not apply to cases in the court of common plea,s, between party and party, who are engaged in litigating a right by private action. For it is provided that in all criminal cases in the court of sessions, wherein challenge without cause is not allowed, the defendant shall have a right to challenge, without cause shewn, two of the jury, <fcc. This would imply that cases like this, resembling qui tam actions, conducted by count and declaration of the plaintiff, should be regarded as civil cases; we therefore approve the view which was taken by the Recorder in respect to this question.
2d. The Act does not, in terms, require either party to be the first actor in making the challenge. In this respect both parties are independent., and either may make the challenge without regard to the position of the other. When the plaintiff is dissatisfied with the jury as it stands, he must make the first move before he can go to trial; and by waiting, the defendant can always ascertain this fact. But where the plaintiff forbears to make the move in the first instance, it should not be in the power of the defendant to compel him to do so, or otherwise lose it altogether. And if the defendant should think proper to exercise his right, it will not then deprive the plaintiff in turn from claiming his. Either has the option to claim the privilege at any time before the jury shall be charged in the case.
The 3d question requires some preliminary explanation to be made before we approach its exact decision.
The mode of drawing and organizing juries at the commencement of each term, seems to be in general as follows : The jurymen attending under the venire being called, their names are put in a hat, and Juries No. 1 and 2 are formed by alternately putting down the names as they are drawn; and when the number of each is completed, it is usual for the clerk to have a list of the supernumerary jurors made *422 out as their names are drawn, for the ordinary business of the court, where vacancies are to be filled up under the order of the„court, and in capital cases. This mode of proceeding seems to be established by long custom, and has the sanction of experience and trial. As, for instance, where a juror on the regular pannel is accidentally absent from any cause, or has been removed by the-order of the Judge, convenience and the dispatch of business will suggest the propriety of calling the first name on the list of supernumeraries to fill his place.
In such cases, however, 1 hold it entirely competent for the court to order any supernumerary juror in attendance to take the vacant place. This will be done in all instances where there is no objection made by one of the parties. Where there is any just reason to believe that a seat has been vacated by one juryman to enable a party to supply his place with another, or where such vacancy has been procured by one of the parties, it would be proper to require, and either party, in such case, might always require, the names of the jurymen referred to to be subjected to another drawing. But without such assertion of right by one of the parties, it is more convenient to let the juryman be called under the order of the court.
In criminal cases, it is, perhaps, nothing but a just indulgence to the prisoner to allow him to have before him all the names of the jury, as they stand drawn iiiHhe first instance, before he should be required to commence making his challenges. This will enable him to look through the whole list, and to make his challenge with intelligence, and with regard to the names as they are called. By leaving part in the box to be drawn after the two juries have been gone through with, he might be embarrassed in his first challenges, and be subjected to hazards in the last, and over which his judgment could have no control. I do not say that this is absolutely necessary to make the organization of a jury for the trial of a prisoner legal. It is one, however, which has its advantages and is unexceptionable in practice. It is necessary, as it respects challenges under the Act of 1841, that a somewhat different practice should prevail, and that a more uniform rule should be laid down. Under that Act, the parties themselves are actors, *423 and they should not be permitted to make their challenges with any view of looking to any particular juror on the supernumerary list as a substitute for the one that may have been withdrawn by challenge. In this respect the challenge should be made as though it were founded in some positive objection to one or two of the pannel, and with no view of acquiring any undue advantage by having certain others substituted in their place, which might frequently be the case were the list from which they were to make their selection to remain unchanged ; that is, to allow the jurymen to be called as their names had been previously set down. To obviate all objections of this kind, and to remove all temptations on the part of juries and parties from entering into a criminal understanding, we would lay down this as an uniform rule of practice, that whenever either party on the record claims the right of challenge, the names of the jurors not empannelled, if they have been previously drawn and set down, shall be subjected to lot again, and the parties,, unless they can shew cause, must take them as they are thus drawn.
To illustrate this, suppose A B C D, and several others, are on the list of supernumerary jurors, whose names stand in the order in which they were regularly drawn; in case of a challenge, they must be put in the hat and drawn over again, with an understanding that the parties must take them as they are thus drawn. Of course, where they have not been previously drawn, this will not be necessary. Although the Recorder speaks of talesmen, from whom the jury were formed, we have been made to understand that his remark refers to those jurors who had attended under the venire, but who were not actually empannelled. They must, therefore, be regarded as of that class which I have designated as supernumerary jurors, and consequently subject to the principles of this opinion. As it regards tales jurors, properly speaking, they are not summoned till the venire has been exhausted, and of course could not have been drawn until the exigency calling for their use has arisen, and then they would have to serve as their names were drawn. In the case under consideration, we think that the Recorder pursued, in every respect, the correct course. The names of the jurors from which the parties *424 were compelled to make a selection, had never been drawn, and they were, therefore, properly drawn, for the occasion requiring their services, which was strictly in conformity with the principles I have laid down, depending on this general proposition, that where supernumerary jurors that have been drawn, are called on to fill vacancies under the order of the court, there is no necessity for another draw, but that where the parties call for new jurymen, under the Act of ’41, they must, in every case, be drawn by lot for the occasion.
Richardson, O’Neall, Evans, Wardlaw and Frost, JJ. concurred.